EBERHARDT, Appellant, vs. RANDALL and others, Respondents.

*December 6, 1917—January 5, 1918.*

*Vendor and purchaser·of land: False representations: Quantity of plow land: Evidence.*

In an action to foreclose a purchase-money mortgage of a farm, wherein defendants counterclaimed for damages for false representations, a finding by the trial court that plaintiff knowingly falsely represented to defendants that there were on said farm 125 acres under cultivation and ready for the plow, that defendants in purchasing the farm believed and relied upon said representation and were induced thereby to make the purchase, and that the actual quantity of land under cultivation and ready for the plow was sixty-one acres, is *held* not to be against the great weight or clear preponderance of the evidence.

ESCHWEILER, KERWIN, and VINJE, JJ., dissent.

APPEAL from a judgment of the circuit court for Polk county: FRANK A. ROSS, Circuit Judge.` *Affirmed.*

Action to foreclose mortgage. Counterclaim by defendants for damages for false representations. Plaintiff sold the farm in question to the defendants and they gave back a mortgage upon the premises for the unpaid part of the purchase price, which is the mortgage sought to be foreclosed here. In their counterclaim the defendants alleged the fol-

lowing items of fraud: (1) That the plaintiff falsely represented to the defendants, at and prior to the time they purchased the farm, that the farm was entirely free from quack grass, except in two spots which plaintiff pointed out to defendants, when in fact there was quack grass all over the farm; (2) that plaintiff likewise represented that there were 125 acres of land on the farm under cultivation and ready for the plow, when in fact there were only sixty and seven-eighths acres of plow land; (3) that plaintiff likewise represented that there was an additional seven acres grubbed and ready to break, when in fact there were but two acres grubbed and ready to break. Upon the trial the court found in favor of the plaintiff as to the first and third claims of the defendants, and in favor of the defendants as to the second claim, the finding as to the latter being as follows:

"That on and prior to said 20th day of September, 1913, during the negotiations for the sale of said land, the plaintiff, to induce said defendants to pay the sum of $57 per acre for said land, knowing the representation to be false, represented to said defendants that there was on said farm 125 acres thereof under cultivation and ready for the plow. That said representation so made by the plaintiff was made as a statement of fact, with the intention that it should be relied upon by the defendants as such, and that said defendants, in purchasing said farm and paying therefor the sum of $57 per acre, believed said representation and relied thereon, and were induced thereby to make said trade, and did not learn of its falsity until some time after they moved onto said farm. That the actual amount of land under cultivation and ready for the plow at the time of said representation by the plaintiff was sixty-one acres."

Upon the findings judgment of foreclosure was entered in favor of the plaintiff for the amount of the notes and mortgages mentioned in the complaint, less the sum of $1,088, being the damages found in favor of the defendants as of the date of the sale. From this judgment plaintiff appeals.

For the appellant there was a brief by *Varnum & Kirk* of Hudson, and oral argument by *N. O. Varnum.*

For the respondents there was a brief by *McNally & Doar* of New Richmond, and oral argument by *W. T. Doar.*

ROSENBERRY, J.    The sole question presented on this appeal is whether or not the evidence sustains the fourth finding hereinbefore set forth.    This case has been carefully presented and ably argued by counsel on both sides, they having in mind the rule that this court will not set aside the findings of the trial court unless against the great weight or clear preponderance of the evidence.    Under that rule we do not approach the determination of the question submitted here as triers of fact in the sense that that term is ordinarily understood.    Before we can disturb the finding of the trial court we must be satisfied from a consideration of all the evidence that it appears that the trial court found against the great weight or clear preponderance of the evidence.    A fair presentation of the question presented by this record would require a restatement of the entire evidence.    This, as has often been said, we will not make.    But the unusual character of this case and the fact that we are not all agreed justifies some further treatment.

The farm in question consisted of six governmental subdivisions or forties of land situated in the northeasterly corner of section 33, 160 rods on the north line and 240 rods on the east line.    The westerly part of the farm consisted of uncleared land covered with oak, popple, and other small timber, commonly known as cut-over land.    The easterly part of the farm was divided into several fields, the location thereof being fairly well indicated by plaintiff's Exhibit 6, appearing on p. 483.    It appears that the defendants *Thomas Randall* and *Frank Randall* examined the premises at least three times before the purchase was consummated.    *Thomas* is a man about seventy years of age and has been a farmer all his life.

Eberhardt v. Randall, 166 Wis. 480.

*Frank* is a man about forty years of age and has also been a farmer all his life, the father and son living together at least

a considerable part of the time. The testimony of the defendants *Thomas* and *Frank* is to the effect that plaintiff represented that there were 125 acres of cultivated land upon

the premises in question.    This testimony is squarely denied
by the plaintiff, and he is corroborated to some extent at least
by Radke, the agent through whom the transaction was con-
summated.    The proposition upon which the plaintiff mainly
relies in this case may be stated as follows: It appeared that
at the time the defendants *Thomas* and *Frank* were upon the
premises they were told that the farm was composed of 240
acres; that it was divided by a fence running north and south
into approximately equal parts.    They admit that they under-
stood and knew that the land lying west of this center fence was
all wild and unimproved and that such cleared land as there
was, was on the easterly side of the fence.    It appears that
on the easterly side of the fence there are some inclosed fields,
A, C, E, and I; that the field marked "B" on the diagram is
pasture land and not cultivated; that the southerly part of
"D" is grubbed but not plowed; that a part of the field marked
"F" is partially cleared but not plowed.    The contention of
plaintiff is that any experienced farmer going upon the prem-
ises, knowing that the north and south fence divided the farm
into approximately two equal parts, must have known that
there could not be 125 acres of land on the easterly side of
the fence, when the fields "B," "H," "F," and part of "D"
by casual inspection could be seen not to be cultivated land.
It must be admitted that there is considerable force to this
contention.    It appears, however, that the cleared land is
not in the form of square fields, that the fences do not follow
the lines indicated on the diagram, and that the cultivated
land is of irregular shape, making it very difficult to cor-
rectly estimate its area.    It appears that the defendants
moved upon the premises and did not discover the fact that
the amount of cultivated land had been misrepresented to
them until they were doing their spring seeding, when they
discovered that the amount of seed they had purchased very
much overran the acreage sowed.    This led them to measure
the premises, when they found that instead of there being 125

acres of cultivated land there were as a matter of fact only sixty-one acres.    The conduct of the defendants after making this discovery is not entirely satisfactory.    They apparently did not make immediate complaint, which they explain by reason of the fact, which appears to be undisputed, that plaintiff, at least a great deal of the time, was without the state and beyond their reach.    But they are not here seeking a rescission of the contract.    By their counterclaim they have affirmed the contract, but seek damages by reason of the false representations.

Upon a careful examination and study of the evidence we are not able to say that it appears that the findings of the trial court are against the great weight or clear preponderance of the evidence.    So much depends upon the relative ability and capacity of the parties that that may have been the determining factor in the mind of the trial court.    We cannot apply to testimony in cases of this kind established standards of measurement; we cannot reason about it, or view it in the light which it might be viewed by a man of average experience, intelligence, and understanding.    It must be viewed, as no doubt the trial court viewed it, from the standpoint of the persons to whom the representations were made, in the light of their capacity to appreciate and understand the situation in which they were placed; that and a great many other intangible elements enter into the determination of the trial court which cannot be made to appear upon a printed record. *Carlson v. Dixon,* 155 Wis. 63, 65, 143 N. W. 1064.    It is a matter of common knowledge that it is very difficult to estimate the area of unfenced fields, especially where, as here, they are of irregular shape and surrounded by brush preventing a view from one field to another.    It may well be that plaintiff was guilty of no intentional wrong.    One of his witnesses, an experienced real-estate man who went there to examine the premises, said that he estimated the cleared land at nearly 120 acres.    A careful reading of the testimony con-

vinces us that the fact that the trial court found against the defendants in respect to the quack grass and the amount of grubbed land does not necessarily in this case impeach their testimony.    This case has had our careful consideration, and, applying to it the principles of law well established in the jurisprudence of this state, we are unable to say that the findings of the trial court are against the great weight or clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

Eschweiler, J. *(dissenting)*.    To me the situation, disclosed by the record is one where the conclusion of the trial court is clearly overwhelmed.

Two men, farmers all their lives, one seventy and the other forty years, having three several times visited the land, knowing that the fence before their eyes substantially divided the 240 acres into two practically equal portions; that all the cleared land that there was must be found on the east side of the fence; having traversed the land themselves and having had represented to them that the tract indicated "B" on the sketch, the night pasture, contained twenty acres and also that about five acres were taken for the house and barn, and having seen that the piece "H" was uncleared and that there was uncleared land on tract "D," are permitted to say that under such a situation they could shut their eyes to the physical facts before them and honestly believe and rely on such belief that the east half of 240 acres contained 125 acres of cultivated land after a deduction of twenty acres for the night pasture, the five acres for the buildings, and something at least for tracts "H" and "D."

The fifty acres of uncultivated land was spread out before them, as easy of computation and ascertainment at the time of purchase as when preparing for trial.

The transaction was closed in September, 1913; they go upon the premises the following spring and plant the same,

and claim to have learned from the fact that the purchased seed overran the acreage fit for cultivation that they had been defrauded. Yet they pay the past-due and then due instalment of interest on this very mortgage in the fall of 1914, and at the same time settle with plaintiff a claim that they made with reference to a shortage in the standing corn that they had bought when buying the farm, but never a word about this present claim. The following year they ask for extension of time to pay the interest then due, and, although hinting at some claim they may still have, nevertheless intimate readiness to pay the second year's interest.

To me the situation of the defendants is so full of laches and devoid of good faith and common sense that it should have received the condemnation of this court of last resort.

KERWIN and VINJE, JJ. We concur in the foregoing dissenting opinion of Justice ESCHWEILER.